Dear Councilmember Batt:
Reference is made to your request for an opinion of this office regarding Section 9-310 of the New Orleans City Charter ("Section 9-310"), in light of the impending installation of slot machines and conduction of slot machine gaming at the New Orleans Fair Grounds Race Course ("the Fair Grounds") owned by Churchill Downs, Inc. Pertinently, Section 9-310 provides:
 "If authorized by law, permits may be issued by the City of New Orleans for the establishment of gambling casinos; provided that, unless it is otherwise provided by applicable and preemptive State law, no more than one land based gambling casino shall be permitted in the City of New Orleans. The casino shall be permitted only on land owned by the City of New Orleans in the area generally bounded by Poydras Street, Tchoupitoulas Street, Canal Street, and Convention Center Boulevard, known as the Rivergate site." (Emphasis supplied).
You advise that after considering the City Charter, all relevant ordinances and an opinion of your City Attorney, you have concluded that the Charter does not prohibit the installation of slot machines at the Fair Grounds, and you ask whether or not this office agrees. In order to adequately respond to your request, this office must determine whether the introduction of slot machine gaming at the Fair Grounds causes the Fair Grounds to become a "gambling casino" under law.
Notably, under applicable state law, the term "casino" is never used in any of the statutes governing slot machine gaming at racetracks. See: LSA-R.S. 27:351, et seq. Rather, it is the Louisiana Economic Development and Gaming Corporation Act, LSA-R.S. 27:201 et seq. (the "Casino Act"), which authorized "casino gaming operations" at the "official gaming establishment" (i.e. the land based casino known as Harrah's New Orleans Casino located at the Rivergate site in Orleans) which contains references to "casinos". In accordance with the Casino Act, the "official gaming establishment" is operated pursuant to the terms and conditions of a Casino Operating Contract (the Amended and Renegotiated Casino Operating Contract, as amended), which is provided for in Part VI of Chapter 5 of Title 27 (LSA- R.S.27:240, et seq.), entitled "Land-Based Casino Operating Contract". This indicates to us that the Legislature does not perceive the conduct of slot machine gaming at racetracks to be "casino" gaming.
In our opinion, the Legislature intended that the conducting of slot machine gaming at an eligible racing facility such as the Fair Grounds is to be considered an enterprise separate and apart from "casino" gaming. The introduction of slot machine gaming at the Fair Grounds cannot cause that facility to become a "gambling casino", a "land-based casino" or a "casino" of any sort, by virtue of the fact that the law provides differentiated authorization and regulation of the two forms of gaming. "Casino" gaming operations, authorized only at the "official gaming establishment", are regulated in accordance with Chapter 5 of Title 27 of the Revised Statutes (LSA-R.S. 27:201, et seq.). "Slot machine gaming" is authorized at "eligible live racing facilities", and is regulated under Chapter 7 of Title 27 (LSA-R.S. 27:351, et seq.)[1]
With respect to the laws of the City of New Orleans[2], we note, as you did, that the New Orleans City Charter does not define "gambling casino". However, Section 11 of Ordinance No. 15219 M.C.S., pursuant to which the City Council called for the election adopting the section of the New Orleans City Charter now referred to as Section 9-310, provides as follows:
 "For the purpose of this ordinance, a "gambling casino" shall mean an establishment at which, as a business, wagering on any of the following games of chance is authorized by law:
 Craps, Dice Games, Black Jack or Twenty- One, Roulette, Chemin de Fer, Baccarat, Wheels of Chance, Keno or Racehorse Keno, Poker using a deck of playing cards, Chuck-a-Luck, or Trente et Quarante any other games that may be approved by the Policy Governing Board. General descriptions of the games of chance enumerated above are contained in Scarne's New Complete Guide to Gambling, First Fireside edition, 1986, pages 259 through 518 and pages 670 through 701. A copy of the general descriptions of the games as contained in the book shall be retained in the Clerk of council's official file pertaining to this ordinance. Any game of chance which is played generally in accordance with the general description as contained in the book shall be deemed to be one of the enumerated games of chance notwithstanding minor variations in rules of play or designation of the game by another name."
Notably, the Council did not include slot machines in the list of games of chance which cause an establishment to be defined as a "gambling casino". We agree with your conclusion that the exclusion of "slot machines" from that list was not an oversight by the Council, in light of the fact that slot machines, as well as a number of other games which could have been included by the Council are referred to in Scarne's New Complete Guide to Gambling, but not in Ordinance No. 15219 M.C.S. We also heed your advice that the "Policy Governing Board" referred to in Section 11 of Ordinance No. 15219 M.C.S. has never been created; accordingly slot machines could not fall under the catchall provision that authorizes the "Policy Governing Board" to include additional games.
Our interpretation of the purpose and meaning of Sec. 9-310 is supported by the actions of the New Orleans City Council, as well as its voters, with respect to previously held elections that resulted in the conduct of gaming, on land and within the City of New Orleans, at locations other than the Harrah's Casino.
We note that in 1996 the Council called for, and the voters of the City of New Orleans passed, a referendum authorizing gaming within the City of New Orleans with respect to the operation of video poker devices. Notably, video poker establishments have never been considered to be "gambling casinos" under the City Charter. It is our opinion that such establishments could not be considered "gambling casinos" because like slot machines, video poker is excluded from the list of games of chance listed in Section 11 of Ordinance 15219 M.C.S.
An election even more pertinent to this inquiry was held in 2003, when the City Council called for, and the City's voters approved, a proposition that specifically authorized the installation of slot machines at the Fair Grounds. The official ballot used for the election provided:
"PROPOSITION
 SUMMARY: TO AUTHORIZE SLOT MACHINE GAMING AT LIVE HORSE RACING FACILITIES (THE FAIR GROUNDS).
 Shall the business of slot machine gaming at a live horse racing facility be conducted within the parish of Orleans?"
We concur in the opinion of your City Attorney, noted in your letter, that "the general rule is to presume that a proposition put to the voters via an ordinance enacted by the Council does not
conflict with the Charter." In our opinion, the proposition authorizing slot machine gaming at the Fair Grounds is valid, indicating that the conducting of slot machine gaming at the Fair Grounds is not in violation of the City's Charter.
Based upon the foregoing, it is the opinion of this office that the introduction of slot machine gaming at the Fair Grounds cannot cause the Fair Grounds to become a `casino' of any sort under the laws of the State or the City; rather, the Fair Grounds is an "eligible racing facility licensed to conduct slot machine gaming" in accordance with LSA-R.S. 27:361A. It is our opinion that the New Orleans City Charter does not prohibit the installation of slot machines at the Fair Grounds.
Yours very truly,
 CHARLES C. FOTI, JR. Attorney General
BY: _______________________________
 JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
CCF, jr./JMZB/clc
[1] The Casino Act is also included separately within Title 27 from the provisions of law applicable to gaming activities conducted on riverboats in accordance with the Louisiana Riverboat Economic Development and Gaming Control Act., LSA-R.S. 27:41, et seq. (the "Riverboat Act"). The Casino Act and the Riverboat Act were enacted in close proximity in time to each other. It is suggested that the term `land based casino', or reference to it as the "casino" came into usage both colloquially and in law as a means of distinguishing gaming as conducted at the official gaming establishment from gaming activities conducted on riverboats in accordance with the Riverboat Act.
[2] It has been suggested that state law preempts the provisions of the New Orleans City Charter in the area of gaming, and we note that Section 9-310 itself refers to "applicable and preemptive State law". Because we do not perceive a conflict between State and City law with respect to slot machine gaming at racetracks, there is no need for us to address preemption herein.